UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.    CRIMINAL NO. 04-10332-RCL

JOSEPH MATZ
    Defendant

## DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO RETURN DEFENDANT TO STATE PRISON

The defendant, Joseph Matz, hereafter Matz, through counsel, respectfully submits this response to the government's motion for an order to return the defendant to state prison.

### Factual Background

On November 3, 2004 a grand jury returned a one-count indictment that charged Joseph Matz with bank robbery, 18 U.S.C.§ 2113(a).  The indictment included a Notice of Additional Factors that property of a financial institution was taken and the taking of this property was the object of the offense, U.S.S.G. § 2B3.1(b)1) and during the commission of the offense there was a threat of death.  U.S.S.G. § 2B3.1(2)(F).  There was no arrest warrant sought at the time of this indictment nor was any detainer lodged at the state of Connecticut correctional institution where Matz was serving a state sentence. The case was referred by order to Chief Magistrate Judge Bowler.  On November 15, 2004 a writ of habeas corpus ad prosequendum was issued requesting that Matz be brought to appear in the federal district court in Boston November 19, 2004.  Due to the U.S. Marshal's inability to secure Matz's appearance in time for the November 18th

hearing, because he had been transferred from Massachusetts to the state of Connecticut, a second writ was issued November 19, 2004 for a court appearance December 6, 2004. However, Matz made his initial appearance December 1, 2004.

**I. This Indictment Should Be Dismissed**

**The Statute of Limitations and the Sixth Amendment Right to a Speedy Trial**

A cursory review of the instant indictment indicates that Matz was indicted November 3, 2004 for a bank robbery that had occurred November 12, 1999. The indictment was returned just short of the statute's five-year limitation, 18 U.S.C. § 3282, a fact that in and of itself causes substantial concern for the defense, but affords him no avenue of relief. The United States Constitution Sixth Amendment speedy trial clause gives no shelter at this time to Matz since the indictment did not issue until November 3, 2004, and his initial court appearance occurred December 1, 2004. United States v. MacDonald, 456 U.S. 1 (1982). As well, only with the filing of the indictment has the clock begun to tick for the Speedy Trial Act provisions. 18 U.S.C. § 3161-3174.

The application of Fed.R.Crim. P. Rule 48(b) to the instant matter becomes much more important in view of the history of this case. Rule 48(b) is a restatement of the inherent power of the court to dismiss a case for want of prosecution whether or not there has been a violation of the Sixth Amendment right to a speedy trial. United States v. Bouthot, 685 F. Supp. 286, 301 (D. Mass. 1988) aff'd 878 F.2d. 1506 (1st. Cir. 1989) citing United States v. Correia, 531 F.2d. 1095, 1099 (1st. Cir. 1976); United States v. Rowbotham, 430 F.Supp. 1254, 1257 (D. Mass 1977); United States v. Judge, 425 F.Supp. 499, 503 (D. Mass. 1976); United States v. Henry, 815 F.Supp. 325 (D. Ariz. 1993). In this matter, Matz was arrested in New York November 29, 1999 by members

of the bank robbery joint task force. The arrest warrant issued from Hampden County for the Springfield bank robbery. Matz was shown bank photos and advised that he was the offender in the three bank robberies, and that he should confess to all three. He appeared then in the federal court in New York. Again members of the joint task force visited Matz in March 2003. Matz was shown the same photos. He was told that he was the individual in the photos. Matz was encouraged to confess. Looking at the four criteria set forth in Barker v. Wingo, there appears no particular reason for the almost five year delay. This was not a complicated investigation. There is only a one-count indictment for one bank robbery and no other defendants are named in the indictment. Clearly Matz could not have requested a prompt disposition of the charges. The prejudice other than the obvious passage of time lies primarily in the loss of a more beneficial sentencing. This relatively uncomplicated case simply languished in the prosecutor's office even though the investigation had been completed, the joint task force arrested Matz in 1999 and interviewed him in March 2003 with the same evidence as will be presented as discovery within the next few days.

**The United States Constitution Fifth Amendment Due Process Clause**

A pre indictment delay by the government may violate due process if the accused can prove actual prejudice caused by the lengthy delay. In the instant matter, Matz was charged in three quite similar bank robberies that occurred all within a ten day period in 1999: November 5th in Springfield, November 12th in Boston and November 18th in Connecticut. For the Springfield bank robbery in Massachusetts Matz was convicted October 13, 2000 and sentenced to a term of three to four years. Under the Interstate Agreement on Detainers Matz was transferred to Connecticut December 1, 2000 and

February 12, 2001 he was sentenced to ten years, five years to serve with a consecutive five year probation. Matz was returned to Massachusetts and on "wrapping up" his state sentence, he was transferred to Connecticut. The Boston bank robbery November 12th is the subject of this federal indictment.

The almost five year delay in returning the indictment sends up a "red flag" and raises the issue of whether Matz was denied due process. The Due Process Clause of the Fifth Amendment provides protection to those not protected under the Sixth Amendment speedy trial provision or the Speedy Trial Act. Under the Fifth Amendment Due Process Clause, a defendant may move for dismissal on the basis that the pre accusatory delay has worked to his detriment. In order to prevail on such a due process claim Matz must show either that he has suffered actual prejudice as a result of the delay or that the prosecution intentionally delayed the indictment to gain a tactical advantage. <u>United States v. McCoy</u>, 977 F.2d. 706, 71 (1st. Cir. 1992) and cases cited therein. This prejudice must be actual, not mere speculative with bare allegations. <u>Acha v. United States</u>, 910 F.2d. 28, 32 (1st. Cir. 1990). Based only on the present posture of the case, it is obvious issues may be raised as to the availability and the memory of bank tellers or any other witnesses to the robbery, the physical evidence and the possibility of concurrent sentencing for Matz. These factors are presumptively prejudicial, but the sentencing issues under the provisions of U.S.S.G. § 1B1.3 for consideration of acts under a common scheme combining the three similar bank robberies for purposes of the career offender provision, U.S.S.G. § 4B1.2, constitute significant differences in the sentencing for Matz.

## II. The Interstate Agreement on Detainers and the Writ of Habeas Corpus Ad Prosequendum

The Interstate Agreement on Detainers (IAD.) at 18 U.S.C. App.2 is a Congressionally sanctioned interstate compact entered into by forty-eight states including the United States and the District of Columbia. The IAD established procedures for the resolution of one jurisdiction's (the receiving state) outstanding charges against another jurisdiction's (the sending state) prisoner. United States v.Crozier, 259 F.3d. 503. 513 (6th Cir. 2001) citing New York v. Hill, 528 U.S. 110, 111 (2000). The IAD was enacted to prevent the many problems caused by detainers being filed and remaining at an institution for years preventing an inmate from taking advantage of various rehabilitative programs and from consideration of parole or an earlier release date. See opinion in United States v. Ford, 550 F.2d.d 732 (2nd. Cir. 1977). The lodging of a detainer under the IAD sets in motion procedures for a prisoner to initiate his transfer to the receiving state, and this process ensures the protection of the right to a speedy trial. Cuyler v. Adams, 449 U.S. 433, 435 n. 1 (1981). In the instant matter the government chose not to file a detainer, but to seek Matz's presence by a writ of habeas corpus ad prosequendum, 18 U.S.C. § 2241(c)(5). Since such a writ is different in purpose, legal basis and historical context, each is a separate and distinct avenue for the federal government to obtain custody. United States v. Kenaan, 557 F.2d. 912, 915 (1st. Cir. 1977) *cert. denied* 436 U.S. 943 citing United States v. Mauro, 436 U.S. 340, 361-362 (1978). If the writ of habeas corpus ad prosequendum is not a detainer under the IAD, then the IAD is not applicable to the instant matter. The First Circuit declined to align itself with the Third Circuit, United States v. Sorrell, 562 F.2d. 227 (1977) en banc *cert. denied* 436 US. 949 and United States v. Thompson, 566 F.2d. 232 (1977) *cert. denied* 436 U.S. 949.

By accepting this position, the government has been allowed to circumvent the strictures of the IAD, and, as the First Circuit noted in the <u>Kenaan</u> opinion render the provisions for trial "meaningless". A prisoner, such as Matz, must rely on the court's ability to forestall potential abuses and seek his remedies in the Fifth Amendment Due Process Clause, the Sixth Amendment Speedy Trial Clause or the Speedy Trial Act. The transfers under such a writ defeats the intent of the IAD to have a prompt trial after custody is transferred in the receiving state and opens the door for various abuses that IAD was enacted to prevent.

Wherefore, the defendant, Joseph Matz, requests that this Court dismiss this indictment for its pre accusatory delay, or in the alternative, direct that this defendant remain within the custody of the federal authorities for a prompt disposition of the charge contained in the indictment.

Dated: December 9, 2004

JOSEPH MATZ

By his attorney

/s/Lois M. Lewis
74 Fuller Terrace
West Newton, MA 02465
Tel: (617) 969-4854
BBO # 298580